Deborah J. **ANDERSON**, Appellant,

v.

**PPCT MANAGEMENT SYSTEMS, INC.**, Appellee.

No. S–11766.

Supreme Court of Alaska.

Oct. 6, 2006.

---

Thomas S. Gingras, Jonathan E. Iversen, Eide, Miller & Pate, P.C., Anchorage, for Appellant.

Joanne Thomas Blackburn, David S. Cottnair, Forsberg & Umlauf, P.S., Seattle, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

MATTHEWS, Justice.

## I. INTRODUCTION

A state employee sued Pressure Point Control Tactics Management Systems, Inc., (PPCT) under theories of vicarious liability, retained control, and negligence for injuries incurred during a training program designed by PPCT and taught by PPCT-certified state employees. We affirm the superior court's award of summary judgment to PPCT on the retained control and vicarious liability claims because we conclude that PPCT did not retain control over the instructors and the instructors were neither servants nor agents of PPCT. We reverse the superior court's award of summary judgment to PPCT on the negligence claim because we conclude that PPCT had a duty of care in developing and implementing its training program.

## II. FACTS AND PROCEEDINGS

### A. Facts

Deborah Anderson attended the State of Alaska Department of Corrections (DOC) training academy from November 5 to December 14, 2001. One week of this six-week program, officer safety week, students were trained in use-of-force techniques through a program developed by PPCT. PPCT designs use-of-force programs that provide criminal justice agencies with (1) a system for training employees, (2) a model use-of-force policy and report forms, and (3) litigation assistance.

The first thirty-two hours of officer safety week teach PPCT techniques and the last eight hours provide simulation training. Anderson alleges that she was injured as a result of the use of excessive force during a simulation training exercise with PPCT-certified instructor Regina McLain. We assume for purposes of review that Anderson was injured during PPCT training.[1] Both PPCT and non-PPCT techniques are used during simulation training.

PPCT does not conduct PPCT training programs. Instead, agencies send employees to a five-day program where PPCT "instructor trainers" train employees to be PPCT "instructors." Once an agency employee is certified as an instructor, she may conduct training to certify other agency employees in PPCT methods. Agencies may also have employees certified as instructor trainers, enabling them to certify other employees · as instructors. Michael Addington was the officer in charge of training on the day

---

1. The superior court found a genuine issue of material fact as to whether simulation training was part of the PPCT program. For purposes of review, we resolve the dispute in Anderson's favor.

Anderson was injured. Addington was certified as both a PPCT instructor and a PPCT instructor trainer.

PPCT uses three sequences of practice: static, fluid, and dynamic. Static training moves in slow motion and breaks down the components of a technique. Fluid training occurs at fifty percent or less of full speed and is the level at which students perform the most repetitions of a technique. Dynamic training is full-speed role playing. PPCT does not require dynamic training for certification.

Instructor trainers must sign an agreement with PPCT. The agreement requires instructor trainers to teach PPCT tactics in an unmodified form and to follow all PPCT procedures for the certification of instructors. The agreement also states that "[t]he INSTRUCTOR TRAINER is a representative of [PPCT] and will act professionally and ethically with all matters relating to Use of Force training.... The INSTRUCTOR TRAINER agrees to wear PPCT Instructor jerseys, or the logo of the INSTRUCTOR TRAINER'S agency or academy." But "[t]he INSTRUCTOR TRAINER shall not represent himself as an agent or employee of PPCT nor enter into any agreement or contract [o]n behalf of said corporation." Breach of the agreement can result in termination of the instructor trainer's certification. Instructor trainers may conduct courses at the request of an agency or on their own initiative. However, PPCT must approve the instructor trainer's training request. Instructor trainers may delete techniques from the PPCT instruction manual, but all PPCT techniques must be taught according to the manual. Instructor trainers may not teach non-PPCT techniques.

Unlike instructor trainers, instructors do not sign an agreement with PPCT. However, instructors must follow certain procedures for class certification. Instructors must submit a training certification request, provide students with instruction manuals, and submit student evaluations, a training injury report, a class roster, and copies of the students' exams to PPCT. When teaching a PPCT technique, instructors may not "grossly modify" the technique in the printed manual. Instructors may delete PPCT techniques or add non-PPCT techniques to the training, but PPCT will not certify or provide litigation support for added or deleted material. Although instructors are not required to wear PPCT clothing, occasionally they wear PPCT gear.

## B. Proceedings

Anderson sued PPCT for negligence, claiming that PPCT owed her a "duty of care to train instructors not to allow the use of excessive force" during classes. PPCT moved for summary judgment on the basis that, because Anderson's injuries did not occur during PPCT training, PPCT could not have proximately caused her injuries. Anderson's opposition claimed that there were disputed issues of fact and developed an additional argument for PPCT's vicarious liability for the negligence of the instructors.

PPCT filed a second motion for summary judgment, arguing that (1) the instructors were not employees of PPCT, and (2) even if the instructors were independent contractors, PPCT was not liable for the torts of its independent contractors. Anderson's opposition again claimed disputed issues of fact and argued that "principles of vicarious liability, respondeat superior, actual and apparent authority, and retained control" made PPCT liable for the actions of the instructors.

The superior court denied PPCT's motion for summary judgment on the negligence claim, finding that there were "material facts in dispute as to whether plaintiff was injured during a segment of the training academy that was a part of the PPCT training." The court granted PPCT's second motion for summary judgment, finding as a matter of law that the instructors were neither employees of PPCT nor independent contractors over whom PPCT retained control. Noting Anderson's shifting theories of liability, the court allowed PPCT to move for summary judgment on the agency theories.

PPCT made a third motion for summary judgment that was eventually withdrawn with permission to file a fourth motion for summary judgment addressing any remaining issues.

In its fourth and final motion for summary judgment, PPCT argued that (1) Anderson could not establish duty or breach under her negligence claim, and (2) no agency relationship existed between PPCT and the instructors. The court concluded that, as a matter of law, the instructors were not acting as agents of PPCT and granted PPCT's motion for summary judgment on the issue of agency. As to the issue of negligence, the court concluded that previously identified factual disputes about whether dynamic training was part of PPCT training remained, and also determined that there was a factual dispute about "whether the technique being used when [Anderson] was injured was a technique taught by PPCT...." Therefore, the court denied PPCT's motion for summary judgment on the negligence claim but explained that at trial Anderson would have the burden of showing (1) "what maneuver was involved in her injury; (2) that the maneuver [was] one that was being taught based on the training that the Instructors had received from PPCT; and (3) that it was somehow negligent or otherwise improper for PPCT to have instructed the Instructors to teach this maneuver to others."

Anderson moved for reconsideration of the court's characterization of the required elements of her negligence claim. Anderson maintained that she should not be required to show that the maneuver involved in her injury was based on PPCT training. Anderson asserted that at trial she could make out a negligence claim by showing "that PPCT negligently trained its instructors regarding excessive force and the use of non-PPCT moves during PPCT training." The court denied the motion for reconsideration and suggested that if Anderson could not meet her evidentiary burden, she should allow judgment to be entered and appeal.

Anderson refused to voluntarily dismiss the case, leading the court to sua sponte reconsider its earlier decision and grant PPCT summary judgment on the negligence claim.

Anderson appeals the superior court's conclusions on summary judgment that (1) the instructors were not employees of PPCT, (2) the instructors were not independent contractors over whom PPCT retained sufficient control to impose liability, (3) there was no agency relationship between PPCT and the instructors, and (4) PPCT did not owe or breach a duty of care to Anderson.

## III. STANDARD OF REVIEW

■ A trial court's ruling on summary judgment presents questions of law and is reviewed independently.[2] This court's review is based on the entire trial record, and in considering these materials this court gives "[t]he non-moving party ... the benefit of all reasonable inferences which can be drawn from the proffered evidence."[3]

## IV. DISCUSSION

### A. Master–Servant Relationship

■ Anderson argues that PPCT is vicariously liable for the negligence of the instructors because the instructors are servants of PPCT. We disagree. Under the doctrine of respondeat superior, a master is liable for the negligence of a servant that occurs within the scope of employment.[4] According to the Restatement (Second) of Agency § 220(1), "[a] servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control."[5] To determine whether a master-servant relationship exists, we look to all of the characteristics listed in the Restatement.[6] Howev-

2. *Snook v. Bowers*, 12 P.3d 771, 776 (Alaska 2000).

3. *Shade v. Co & Anglo Alaska Serv. Corp.*, 901 P.2d 434, 437 (Alaska 1995) (citing *Deal v. Kearney*, 851 P.2d 1353, 1361 (Alaska 1993)).

4. *Powell v. Tanner*, 59 P.3d 246, 248 (Alaska 2002).

5. RESTATEMENT (SECOND) OF AGENCY § 220(1) (1958).

6. *See Nicholas v. Moore*, 570 P.2d 174, 177 (Alaska 1977). RESTATEMENT (SECOND) OF AGENCY § 220(2) (1958) states:

　(2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:
　(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

er, the most important factor is whether the alleged master had the right to control the manner of performance of the work.[7]

■ Although PPCT set standards, curriculum, and course protocol, PPCT did not possess sufficient control over the instructors to create a master-servant relationship. PPCT did not pay the instructors, and Anderson does not contend that PPCT had the authority to fire them.[8] While PPCT could deny certification for the class and revoke the certification of the instructor, the only significant effect of these actions would be loss of litigation support. Although PPCT could prohibit instructors from teaching certified classes, there is nothing in the record to indicate that PPCT would try to bar instructors from teaching PPCT methods in non-certified classes. The record demonstrates that DOC, not PPCT, told instructors not to deviate from the PPCT manual. The parties do not appear to have believed that they were creating a master-servant relationship. While two instructors referred to themselves as "representatives" of PPCT, they did not refer to themselves as employees, and one stated clearly that he "did not work for PPCT." Based on all of these fac-

tors, we conclude that, as a matter of law, the instructors were not servants of PPCT.

## B. Agency

■ Anderson argues that, even if the instructors were not servants of PPCT, they were agents of PPCT and PPCT is liable for the tortious acts of its agents. We have recognized that a principal can be vicariously liable for the torts of its agents.[9] Under the Restatement, "authority to do an act can be created by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account." [10]

■ While PPCT's conduct could be interpreted as expressing a desire for instructors to act on its account,[11] the record is devoid of evidence that instructors actually and reasonably believed PPCT wanted them to act on PPCT's behalf. Deposition statements by instructors that "instructors are representative of [PPCT]," instructors "represent [DOC] and PPCT," and that instructor trainers are "elite member[s] of the organization"

---

(b) whether or not the one employed is engaged in a distinct occupation or business

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

7. *See Nicholas,* 570 P.2d at 177.

8. We recognize that gratuitous acts may sometimes create a master-servant relationship. RESTATEMENT (SECOND) OF AGENCY § 225 (1958). However, comment b to § 225 states that "[i]n determining whether or not one rendering gratuitous assistance to another is a servant, the

purpose for which the former acts may be important." The example given is that "if a car is stalled in traffic and another driver gets out of his own car to assist in pushing the car to the curb, such driver is presumably not a servant of the owner of the first car if his purpose is to remove an obstruction to his own progress down the street." In this case the purpose of the service was to benefit DOC, not PPCT.

9. *Cummins, Inc. v. Nelson,* 115 P.3d 536, 544 (Alaska 2005) (holding that because agent had apparent authority to act for principal, both agent and principal were liable for the negligence of the agent "as if they were personally negligent"); *see also Austin v. Fulton Ins. Co.,* 498 P.2d 702, 705 (Alaska 1972) (noting that principal is liable for tort committed by agent within scope of apparent authority).

10. RESTATEMENT (SECOND) OF AGENCY § 26 (1958).

11. The training manual states that if an instructor's certification is not kept current, "the instructor is prohibited from performing instructor duties as a representative of PPCT." The fact that PPCT's certification decision was based largely on information provided by the instructors might show that the instructors were authorized by PPCT to make decisions on PPCT's behalf.

indicate that the instructors believed that their behavior reflected upon the reputation of PPCT. There is no indication that the instructors believed they had the authority to act on PPCT's behalf. Addington articulated his belief that he "represent[s] the techniques that [PPCT] teach[es]" but not that he "represent[s] the organization."

■ Anderson argues next that the instructors had apparent authority to act on PPCT's account. We have adopted the Restatement general rule for creation of apparent authority:

[A]pparent authority to do an act is created as to [a] third person[ ] by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.[12]

There are three considerations in evaluating apparent agency: (1) the manifestations of the principal to the third party; (2) reliance on the principal's manifestations by the third party; and (3) the reasonableness of the third party's interpretation of the principal's manifestations and the reasonableness of the third party's reliance.[13]

■ As the Restatement indicates, the manifestation may be in the form of "written or spoken words or any other conduct...."[14] The manifestation may be directly communicated to the third party or may come through, among other things, signs or advertising.[15] However, no agency relationship exists where the principal never indicates to the third party that the supposed agent has authority.[16] Anderson argues that statements made by instructors and references to the PPCT manual during training were sufficient to indicate to Anderson that the instructors had authority. But because Anderson does not identify these statements, it would be impossible to determine whether her belief was reasonable. Furthermore, the statements were not made by the principal, PPCT. Although there is evidence in the record that instructors sometimes wore PPCT gear, there is no evidence that any of Anderson's instructors wore PPCT gear during her training. While the PPCT manuals might be analogized to signs or advertising, PPCT never communicated directly with Anderson. This court has found it to be clear error for a trial court to find apparent agency when the third party never spoke with the principal about the transaction at issue.[17]

Even if there had been a sufficient manifestation by PPCT, "[t]here must be such reliance upon the manifestation as exposes the plaintiff to the negligent conduct."[18] There is no evidence in the record indicating that Anderson's reliance on an agency relationship was a factor in her participation in PPCT training.[19]

### C. Retained Control

Anderson argues that the instructors were independent contractors, and because PPCT retained control over the manner in which they conducted training, PPCT is liable for the instructors' negligence. We agree with the superior court's conclusion that PPCT did not retain sufficient control for liability to attach.

---

12. *City of Delta Junction v. Mack Trucks, Inc.,* 670 P.2d 1128, 1130 (Alaska 1983) (quoting RESTATEMENT (SECOND) OF AGENCY § 27 (1958)).

13. *Cummins,* 115 P.3d at 542.

14. RESTATEMENT (SECOND) OF AGENCY § 27 (1958).

15. *Id.* at § 8 cmt. b (1958).

16. *Bruton v. Automatic Welding & Supply Corp.,* 513 P.2d 1122, 1126 (Alaska 1973) (holding that mere loan of a vehicle not manifestation that borrower may act on loaner's account).

17. *Perkins v. Willacy,* 431 P.2d 141, 143 (Alaska 1967).

18. *Cummins,* 115 P.3d at 543 (quoting RESTATEMENT (SECOND) OF AGENCY § 267 cmt. a (1958)).

19. *But cf. Mack Trucks,* 670 P.2d at 1131 (holding it was jury question whether Mack Truck's acquiescence to Alaska Mack's use of its name and reputation was sufficient for agency by apparent authority); *Mercer v. Weyerhaeuser Co.,* 324 N.J.Super. 290, 735 A.2d 576, 594 (1999) (holding plaintiffs' assertions that principal's reputation influenced their decision created issue of fact for jury).

■ As a general rule, an employer is not responsible for the negligence of an independent contractor.[20] However, if an employer has "retained an element of control over the work, he should be responsible for the harmful consequences of its performance as a concomitant of the control retained."[21] This is not an exception to the independent contractor rule, but rather a form of direct liability of the employer for his own negligence in exercising retained control.[22] The Restatement clarifies that the rule applies only where the employer has retained "some degree of control over the manner in which the work is done."[23] The employer has not retained sufficient control where he has only "a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations."[24] Instead, the employer must retain such control "that the contractor is not entirely free to do the work in his own way."[25] Because retained control subjects an employer to direct liability, the control retained must be related to the cause of the injury.

■ We consider a number of factors when deciding whether retained control applies, none of which is individually determinative of the outcome. The right to conduct safety inspections and the authority to direct that dangerous equipment not be used or operations cease because of safety concerns indicated retained control in *Hammond v. Bechtel Inc.*[26] and *Moloso v. State.*[27] Obligating the independent contractor to follow specific procedures in accomplishing the work and retaining responsibility to revise job specifications to ensure worker safety were strong evidence of retained control in *Everette v. Alyeska Pipeline Service Co.*[28] But in *Petranovich v. Matanuska Electric Ass'n,*[29] the right to conduct inspections and stop work were not sufficient to attribute liability where the contract indicated that the independent contractor was responsible for safety compliance. Inspections and stop-work provisions do not necessarily establish retained control if the employer does not assume any affirmative safety duties. In *Moloso* the court also noted that "[i]f the employer reserves and exercises only the right to inspect the construction work to see that the contract specifications are met while the independent contractor controls how and when the work is to be done, there is probably not sufficient retained control to subject [the employer] to liability."[30] Merely retaining the power to forbid work from being done in a dangerous manner is not in itself a sufficient degree of retained control to result

**20.** *Morris v. City of Soldotna*, 553 P.2d 474, 478 (Alaska 1976).

**21.** *Id.*

**22.** *Moloso v. State*, 644 P.2d 205, 211 n. 5 (Alaska 1982).

**23.** Restatement (second) of Torts § 414 cmt. c (1965).

**24.** *Id.*

**25.** *Id.*

**26.** 606 P.2d 1269, 1275 (Alaska 1980) (finding issues of material fact where employer had an extensive safety inspection process, and had the authority to direct that defective equipment not be used by the independent contractor).

**27.** 644 P.2d at 212–14 (holding that reasonable minds could differ on whether state retained control where state had authority, which it in fact used, to suspend work due to unsafe conditions, to evaluate and change plans as construc-

tion progressed, and arguably to control the safety procedures on the job).

**28.** 614 P.2d 1341, 1348 (Alaska 1980) (holding genuine issue of fact found where independent contractor obligated to adhere to certain job specifications, including specific procedures for handling and stringing the pipe on the pipeline, where one incident indicated that Alyeska retained responsibility to revise job specifications to ensure worker safety, and where project safety control manual was published in part by Alyeska).

**29.** 22 P.3d 451, 452, 455 (Alaska 2001) (adopting the superior court's finding that right to conduct inspections of the project and to stop work were not sufficient to attribute liability where safety requirements made it clear that the independent contractor was responsible for compliance and contract did not suggest any affirmative safety duties).

**30.** *Moloso,* 644 P.2d at 211.

in liability.[31]

In this case, PPCT did not reserve the right to conduct safety inspections though it did advance some safety requirements. However, as in *Petranovich*, any safety requirements were the responsibility of the instructor, not PPCT. While PPCT told instructors to follow specific speed and repetition guidelines during training, these procedures were designed to help students retain information. The record does not indicate that PPCT has the right to order a training stopped or resumed. PPCT may have the right to review an instructor trainer's techniques or to receive course evaluations, but this is insufficient to indicate retained control under both the Restatement guidelines [32] and *Moloso*.[33] PPCT can make suggestions or recommendations, but DOC is not required to follow them. PPCT cannot force DOC to employ particular techniques or training methods, or even prescribe alterations and deviations in DOC's training methods. If PPCT disagreed with a training method employed by instructors at DOC, the most PPCT could do is refuse litigation support.

### D. Negligent Training

Anderson's final argument is that PPCT negligently trained instructor trainers and instructors regarding safety and the use of non-PPCT moves during PPCT training. In its sua sponte order denying PPCT's motion for summary judgment the superior court explained that, in order to prevail on her negligence claim, Anderson must show at trial (1) "what maneuver was involved in

[her] injury; (2) that the maneuver is one that is being taught based on the training that the Instructors had received from PPCT; and (3) that it was somehow negligent or otherwise improper for PPCT to have instructed the Instructors to teach this maneuver to others." Because Anderson could not produce evidence that she was injured by a PPCT maneuver, the court granted PPCT's motion for summary judgment.

The superior court framed Anderson's negligence claim too narrowly. Anderson argues that a reasonable training program should include safety precautions that were not included in the PPCT course. While the general rule is that a person is not required to act to protect another, we have concluded that, when an actor undertakes to render services to another, section 323 of the Restatement (Second) of Torts sometimes establishes a duty of care.[34] In *Bryson v. Banner Health System* we recognized that multiple provisions of the Restatement reflect the "overarching view that 'undertakings can create a duty of care' and that 'one who voluntarily assumes a duty must then perform that duty with reasonable care.'"[35] We concluded that where a treatment center undertook to provide Bryson with substance abuse treatment, "it assumed a duty to treat her with reasonable care."[36]

Having undertaken to train instructor trainers and instructors, PPCT had a duty of care in developing and implementing its training program to avoid exposing the eventual students of those instructors to an unreasonable risk of danger. This duty is

**31.** *See State v. Morris*, 555 P.2d 1216, 1218 (Alaska 1976) (quoting *Orr v. United States*, 486 F.2d 270, 275 (5th Cir.1973)).

**32.** RESTATEMENT (SECOND) OF TORTS § 414 cmt. c (1965).

**33.** 644 P.2d at 211.

**34.** *See City of Kotzebue v. McLean*, 702 P.2d 1309, 1312–13 (Alaska 1985) (holding a city which undertakes to provide police protection to its residents has a duty to exercise reasonable care in providing those services); *Williams v. Mun. of Anchorage*, 633 P.2d 248, 251 (Alaska 1981) (holding municipality that voluntarily supplies a ladder for access between a tugboat and a dock is under a duty to exercise some degree of care toward those using the ladder); *Adams v. State*, 555 P.2d 235, 240–41 (Alaska 1976) (if the state voluntarily conducts building fire safety inspections, it must exercise reasonable care in conducting the inspection and abating known fire hazards). Section 324A of the Restatement, a parallel provision, applies this liability to harms to a third party.

**35.** 89 P.3d 800, 805 (Alaska 2004) (quoting 2 DAN B. DOBBS, THE LAW OF TORTS § 319, at 860–61 (2001)).

**36.** *Id.* at 805.

not, as the superior court suggested, limited to danger from PPCT techniques and does not, as PPCT claims, require PPCT to control the DOC's conduct or warn DOC trainees. Nor does the claim require a showing that PPCT had control over the DOC academy or had an agency, independent contractor, or master-servant relationship with the instructors.[37] Rather the duty extends to all the techniques and procedures that are part of the training program. Anderson alleges that PPCT developed a program that, as a whole, produced instructor trainers and instructors who lacked the training they reasonably needed to protect their future students from harm.

PPCT identified dynamic training as the third sequence of practice. PPCT does not provide any formal safety training for instructors or monitor PPCT training. PPCT provides some general admonitions to instructors on safety in simulation training: "Simulation or dynamic training should only be conducted utilizing the proper safety equipment by instructors who have been trained in the use of the protective equipment and the proper design and implementation of this type of training." After describing the dynamic method of learning, the student manual parenthetically states, "[s]afety considerations should be utilized." PPCT does "not offer instruction in dynamic training." PPCT tells instructors that dynamic training should only be "practiced when proper safety equipment and supervision are present." PPCT also suggests outside reading material about "the safe and proper method of conducting dynamic training exercises."

Danger to students may arise from both PPCT and non-PPCT moves during dynamic training.[38] Assuming that Anderson was injured during PPCT training, the question for the jury is whether PPCT's training program failed to take reasonable steps, such as pro-

viding sufficient warnings and safety precautions for instructor trainers and instructors, that would have prevented Anderson's injury.

## V. CONCLUSION

We AFFIRM summary judgment on the vicarious liability and retained control claims. We REVERSE the grant of summary judgment on the negligence claim.

---

**37.** The case PPCT cites is not to the contrary. In *Gus & Jacks Tire Shop v. Reznor,* 8 Fed.Appx. 696, 700 (9th Cir.2001), the court dismissed a negligent training claim because the record did not suggest that the training program was inadequate. Only the negligent supervision claim was dismissed based on a lack of an agency relationship.

**38.** PPCT argues that, because Anderson "admits she was not injured by a PPCT maneuver," she has failed to show breach. Because we reject the superior court's characterization of PPCT's duty, PPCT's argument is moot.